The injunction must be denied, and the order restraining the defendants from executing the lease vacated.

I have arrived at the above conclusion after careful investigation and deliberate reflection.    The case itself is of great importance; the principles involved are still more important.    I have been much aided by the able and exhaustive arguments of the distinguished counsel concerned in it; their briefs, especially the full and elaborate brief of the opening counsel, containing a summary of the law upon the subject.

---

THE MORRIS CANAL AND BANKING COMPANY *vs.* FAGIN and others.

1. The canal company having filed their bill to restrain the defendants from occupying land, alleged to belong to the complainants, for their canal and embankment, an injunction was denied on final hearing, on the grounds that the title to the premises was in dispute and open to reasonable doubt, and that for the injury complained of an adequate remedy existed at law.

2. The principles by which injuries are tested in their character as nuisances, for the prevention or suppression of which courts of equity administer injunctive relief, are substantially the same, whether such nuisances be private or public.    In either case, the injury must be such as the courts of law cannot adequately redress.

3. An injunction will not be granted where an action of ejectment will restore the complainant to all his rights.

4. Considering the canal as a public highway, the granting of an injunction to restrain encroachments on it will depend upon the extent to which such encroachments impede navigation.

5. Where, as in the present case, the alleged encroachment does not materially narrow the water way within the width it has for navigation,

above and below the place where such encroachment exists, and does not interfere with the tow path, the injury, if a public nuisance, can be remedied by indictment; and if a private one, and the complainants claim title to the land, an action at law will afford sufficient protection and relief.

The hearing of this cause was had upon bill, answer, replication, and proofs, before the Vice-Chancellor, to whom the same had been referred.

*Mr. J. F. Randolph* and *Mr. Vanatta,* for complainants.

*Mr. N. Perry, jun.,* and *Mr. G. N. Abeel,* for defendants.

THE VICE-CHANCELLOR.

In or about the year 1830, the complainants constructed their canal along Commercial dock, in the then town of Newark. The course of the Passaic river at this point is not far from southeast. Nearly parallel with the river, and several hundred feet from it on the southwest, was an ancient public highway called River street, or River road. The dock and land between the road and the river belonged to one Jonathan Cory. The canal was constructed between the southwesterly side of the road and river, but precisely where, with reference to these limits as they then existed, whether wholly on Cory's land or wholly in the street, or partly on his land and partly in the street, is a controverted matter in the cause.

Soon after the construction of the canal, Cory entered into an agreement with the company respecting a basin for commercial purposes in connection with his dock, to be made by him on his land opening into the canal, and between it and the river. This agreement was made in May, 1831. The basin was to be one hundred and thirty feet on its side next the river, and one hundred and twenty feet from it, with its sides extending about two hundred and forty feet to the canal. He was to pay $1000 for the privilege of making it, which sum the company were to refund if they failed to sup-

ply water sufficient to float boats, or, if it became necessary, to have it filled up. The company were to use the basin for their boats free of charge, and Cory to maintain its sides in good order, and to connect it with the canal by removing the bank. In pursuance of this agreement the basin was built, and continued to be more or less used by Cory and his assigns, in common with the company, from 1831 to 1866.

In the latter year the defendants had become owners of a tract of the original land of Cory, including the basin. On this tract, extending from the river to the canal, they had begun the erection of a flour mill next to the river, and were preparing to drive piles in and fill up the basin to erect on it a cooper shop, in connection with their mill, in the rear of it and adjoining the canal. The company objected in the first instance to the taking of the basin, but afterwards consented to it up to their line. The true location of that line became then the subject of dispute, and is the subject of dispute in this cause. Above the basin, through the city of Newark to the foot of the plane, the width of the water on the surface of the canal was about twenty-six feet. The defendants claimed this to be the true width opposite their land, and asserted that their title extended to a line twenty-six feet from the perpendicular wall on the opposite or southwesterly side. The company claimed title to a line forty-eight feet from such wall, leaving in dispute a strip of land twenty-two feet in width.

On the 27th of January, 1867, the company exhibited their bill of complaint, upon which an injunction was issued, restraining the defendants from driving piles on this strip, or otherwise obstructing the company in its use. Upon answer filed, a hearing was had, and on the 6th of April, 1867, the injunction was dissolved. The suit for an injunction being continued, voluminous testimony was taken, and the cause brought to hearing on the pleadings and proofs.

The company was incorporated in 1824. Its charter authorized a canal connecting the waters of the Delaware with the waters of the Passaic. A supplement passed January,

1828, authorized the continuance of the canal to the waters of the Hudson, with the proviso that the canal should connect with the Passaic at the village of Newark, so that boats could pass from it to the river, and back. The original charter enabled the company, upon filing with the Secretary of State a survey of the route, to enter upon, take possession of, and use all lands so surveyed, subject to compensation thereafter to be made. This right of taking lands without compensation first made was withdrawn by the supplement of 1828, in respect to the continuation of the work to Jersey City. By this supplement no lands could be taken, except by consent of the owner, before appraisement of their value, with damages and payment or tender of the amount. But the company by this supplement were empowered in so continuing their canal, to construct it through, upon, or along any street in Jersey City or Newark, and by so doing no payments were required. In such case the width of the land occupied by the canal and its tow path was limited to thirty-two feet.

The outlet to, or connection with the river, required by this supplement, was made a short distance above the Commercial dock, which lay between the outlet and Jersey City. It is a question whether the canal at this point was a part of the original work, or of the continuation authorized by the supplement. The complainants insist that it was constructed under the act of 1824, and as a part of the original work. That the land taken for it, and on which it was actually made, was a part of Cory's land, between the river and the road, one hundred feet or thereabouts from the latter, and making a strip forty-nine feet ten inches wide, and nine chains and forty links long. These measurements are obtained, not from deeds or paper title from Cory or his assigns —for these they do not claim to have received—but from field notes and a map filed in May, 1828, in the clerk's office of the county of Essex, showing a canal route at that point. They do not claim under proceedings subsequent to or in pursuance of these field notes and map—which proceedings

are prescribed by both charter and supplement—for it is admitted that such proceedings were not had. The field notes were filed to be used, as they say, if Cory should not give his consent, and were rendered superfluous for purposes of title when he afterwards consented. They allege that they entered on and took the lands described in the notes by virtue of the original act, which legalized such entry and taking without previous payment or consent. That such entry and taking gave them *title*, and that the value of the lands was given or remitted by the owner. That their tow path was at first on the side next the river, and when their land was disused for that purpose, and was flowed by the water of the basin, their title to it was in no wise impaired.

The defendants, on the contrary, deny that the canal was constructed of the width, or on the site shown by the field notes and map. They allege that it was constructed in River street, as it existed at that date, and as it still is. That the work was done in pursuance of the supplement of 1828, passed two years before, and thereby limited in width for the water way and tanks to thirty-two feet. That the present tow path is in River street, outside of a railing six feet from the perpendicular wall, which space of six feet, with the space occupied by the water way, make up the full width which the complainants are lawfully authorized to hold. They allege that the lines of River street, as they existed in 1830, were afterwards, and in 1855, designated and fixed by commissioners, lawfully appointed for that purpose by the authorities of the city of Newark. That the space of thirty-two feet, now occupied by the complainants, is within the street lines so defined, and that the title of defendants extends by their deed to the water edge of the canal.

It is not denied by the complainants that the canal is in part, if not wholly, within River street so defined. But they assert, and much of their evidence is directed to prove, that the original location of the street has been changed; that, in 1830, it ran upon a bluff, at the base of which, and some distance from the lines of the street, their canal is alleged to

have been built; and that, by the cutting down of the bluff, the course and position of the street were shifted nearer to and upon the canal.

Whether or not the tow path was at first on the river side of the canal, and if so, for how long, and whether or not the canal was built upon the street, are questions of fact in regard to which many witnesses on both sides have testified.   As to both questions, and especially the location of the canal with reference to the traveled track of the street, there is a direct conflict of testimony, which only the long lapse of time and the great changes in the aspect and condition of the street, can satisfactorily explain.   Cory died in 1837.   Captain Beach, the chief engineer, has been dead many years, and after diligent search among his papers, nothing has been found to elucidate the facts.   The original field notes are lost.   Lorenzo A. Sykes and Arnold G. Mason, witnesses of the complainants, were assistant engineers, and are relied on to prove that the canal was constructed on the lines, and of the width, laid down by the field notes and map of 1828. They speak from recollection, and think that it was; but their testimony is marked by some vagueness and uncertainty, and hardly amounts to determinate proof.   Mason, when cross-examined, says that the west line of the canal at this place ran directly along the wagon track of the street, and that he did not think it interfered with the track, except at a point opposite where the land of the defendants now is. This does not show the route to have conformed to that of the field notes and map.

The foregoing statement sufficiently exhibits the nature of the title set up by the complainants, and the dispute in which it is involved.   It is a *contested* title, open to reasonable doubt.   They do not claim by prescription, by adverse possession, or by a lost deed, but by their entry and taking under the special authority conferred by their original charter. They do not claim an easement, but land.   Their title, if good, can be enforced by an action of ejectment.   The questions of law and of fact which this title involves, are specially

those which a court of law is the proper tribunal to try. This being so, what jurisdiction has this court to investigate and determine them? It is said that the occupation of the premises by the defendants, and the erection thereon of their shop, is a nuisance which this court will restrain. That the canal is a public highway, and the action of the defendants an interference with it amounting to a nuisance, injurious to the public at large, as well as to the interests of its owners. That where a nuisance exists, such as this court will restrain or abate, the denial of the complainant's title will not oust it of jurisdiction to examine and adjudicate the right.

But in the present case, *the fact of the nuisance* is denied, as well as the title or right. The principles by which injuries or wrongs are tested in their character as nuisances, for the prevention or suppression of which courts of equity will administer injunctive relief, are substantially the same, whether such nuisances be private or public. In either case, the familiar rule is, that to authorize or justify such relief, the injury complained of must be such as the courts of law are unable adequately to redress. In *Stevens* v. *Erie Railway Co.*, 6 *C. E. Green* 259, an injunction was denied by this court, because ejectment would lie and an action for mesne profits would, in one suit, give damages for the detention. It was said by the court, that injunctions do sometimes issue to restrain constantly repeated trespasses requiring a continued succession of suits, but not where ejectment will restore the complainant to all his rights.

In the two cases of *The Morris & Essex R. Co.* v. *Prudden*, 5 *C. E. Green* 530, and *Carlisle* v. *Cooper*, 6 *C. E. Green* 576, the authorities and principles applicable to this subject are elaborately reviewed and discussed. In the former case it is said, that " the remedy by *indictment* being so efficacious, courts of equity entertain jurisdiction over public nuisances with great reluctance, and where an ample remedy for an invasion of the public right by indictment exists, a court of equity will not interfere by injunction, unless in a case of

pressing necessity to relieve the public travel from immediate and serious inconvenience." In the latter case it is said, that "the jurisdiction of courts of equity over the subject of nuisance is not an original jurisdiction. It does not arise from the fact that a nuisance exists, but results from the circumstance that the equitable power of the court is necessary to protect the party from an injury for which no adequate redress can be obtained by an action at law. As a condition to the exercise of that power, it is essential that the right shall.be clearly established, or that it should have been previously determined by the action of the ordinary tribunals for the adjudication of the rights of the parties, and the injury must be such in its nature and extent as to call for the interposition of a court of equity."

The defendants having taken possession of the premises, driven piles on it, and erected their shop, the bill prays a decree and perpetual injunction.that the obstruction be removed, and the complainants quieted in the peaceful and lawful possession. The canal at this point has not been narrowed within the width which, as before stated, it has above, through the city, to the base of the inclined plane. The line of the water edge along the shop and land occupied by the defendants, is a continuation of that directly above and below. The use of the canal as a public highway is there as free and advantageous as it is immediately above and below. The tow path is on the southwesterly side, and in the street, and from the necessity of the case, could not be on the side next the river. That side is the berme bank, the uses and value of which are stated by the then president of the company, Mr. Talcot, who was examined as a witness. "It forms," he says, " the canal, and holds the water ; it is a hitching-place for boats when not in motion ; forms a place for boatmen and canal repairers to walk along the canal ; may be used to widen the canal, the water-way, if necessary ; is of use to keep nuisances from the canal ; is a place to load and unload cargoes ; is a place to pass to and from, to keep the canal in order and repair when necessary."

The manner in which adjacent owners occupy their lands on each side of the premises in dispute, would necessarily prevent or impede the occupation by the company of a berme bank for some of the purposes stated by the witness. Others of these purposes are not defeated by the defendants' occupation. But taking their character and value to be as he states, they are not such as to demand a different or more efficient protection than courts of law are competent to give.

There is nothing in these views at variance with the opinion expressed by the court when the injunction was dissolved. The general reference in the opinion to obstructions as a nuisance, applies only to the allegations of the bill and affidavits. Whether an obstruction is a nuisance, such as equity will prevent by injunction, depends obviously on its nature and extent; how far it stops or impedes navigation. What that nature and extent were, did not then appear, as they have since been disclosed by the proofs.

Upon the ground that the complainants' title should be settled at law, and the ground that the injury complained of can be there adequately redressed, I am of opinion, and do respectfully advise, that the relief prayed for should be denied, and the bill of complaint dismissed, with costs.